### BARNETT v. ANCHOR CO. et al.

(Circuit Court of Appeals, Seventh Circuit. March 13, 1924. Rehearing Denied April 15, 1924.)

No. 3296.

1. **Patents** ⬥328—703,602, claims 1, 2, 4, for rail stay, held not infringed.
    Patent No. 703,602, claims 1, 2, 4, for rail stay, comprising clamping plate rigidly secured to web of rail and a depending flange bearing against side of tie, *held* not infringed by device to prevent creeping of rails, depending on cramping of rail between its jaws, caused by forward thrust of rail.

2. **Patents** ⬥155—Disclaimed matter may be considered as showing what was in inventors' minds.
    Matter, though disclaimed, is still in record, and may be accepted as showing historically what was in inventors' minds.

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Illinois.

Suit by Otto R. Barnett against the Anchor Company and another. Decree for defendants, and plaintiff appeals. Affirmed.

Otto R. Barnett, of Chicago, Ill., in pro. per.
Edwin B. H. Tower, Jr., of Milwaukee, Wis., for appellees.

Before ALSCHULER, EVANS, and PAGE, Circuit Judges.

PAGE, Circuit Judge. Plaintiff appellant, called plaintiff, sued defendants appellees, called defendants, charging infringement of letters patent No. 703,602, issued July 1, 1902. The District Court held that there was no infringement. The patent states that the object is to—

"positively anchor the rails to the ties, and thus effectually prevent such creeping of the rails and hold the cross-ties at right angles to the rails, particularly at the rail joints, which are requirements essential to the maintenance of a perfect track construction."

"To that end," the specifications say:

"The invention consists in the combination, with a railway rail and its supporting tie, *of a rail stay comprising, essentially, a clamping plate rigidly secured to the web of the rail by a bolt passing through said parts and a depending flange bearing against the side of the tie.*"

Claims 1, 2 and 4 are involved, and read as follows:

"1. The combination, with the cross-tie and rail seated directly thereon, of a clamping plate rigidly secured to the web of the rail and formed with an outwardly extending base plate, and a flange depending from said base plate and bearing against the side of the cross-tie and formed with an extension bearing with its top edge on the under side of the rail as set forth.

"2. The combination with a railway rail and cross-tie, of a rail stay formed in one piece and comprising a clamping plate rigidly secured to the web of the rail by a bolt passing transversely through said parts, and a brace extending lengthwise the rail and bearing with one end against the cross-tie and its upper edge against the under side of the rail substantially as described."

"4. The combination, with the rail and cross-tie, of a rail stay formed in one piece, and comprising a clamping plate bolted to the web of the rail, a baseplate bearing on top of the cross-tie, a flange depending from the base plate and bearing against the side of the tie, and a brace projecting at right angles from said flange and bearing against the under side of the rail substantially as described."

The device of the patent in suit is here shown:

In the illustration above, *f* represents the clamping plate, rigidly attached to the web of the rail by the bolt *C*. *g* is the inclined portion of the device, extending from *f* down over the top of the base of the rail. *h* is the base plate, resting upon the top of the tie. The small square, through which the line from the letter *h* to the base plate passes, is the top of the spike through the base plate into the tie. *i* is the flange impending from the base plate *h* down and along the side of the tie and it extends to some extent under the base of the rail. *i′* is a rib upon the impending flange, forced into the side of the cross-tie so as to allow the rail stay to obtain a grip on the cross-tie and prevent the cross-tie from tilting or rolling. *j* is a brace extending at right angles from the impending flange *i*, so that its upper edge contacts with the bottom of the rail. Its purpose, stated in the specifications, is to guard against the breaking of the flange by the strain it is subjected to in preventing the

creeping of the rail. *D* is a letter used in the specifications for the purpose of denoting the whole rail-stay or device of the patent.

Below is defendant's device:

The device is so constructed that the figure *1* represents an upper jaw and the figure *2* the lower jaw, extending under the base of the rail. *3* is a downwardly extending arm, that rests against, but is not attached to, the tie. The device is driven upon the rail with the base of the rail between the jaws. Figure *5* is a flange, with a hole through its top, considerably larger than the cotter pin *6*, with which the device is fastened to the web of the rail, and, except that the device is driven upon the rail, as stated, and the loose cotter pin attachment, there is no other attachment to the rail or the tie in defendants' appliance. The operation of the defendants' device is quite simple. When the rail is thrust in the direction of the arrow, the arm *3* contacts with the tie and stops the forward movement of the rail by cramping the rail between the jaws, which is permitted by the looseness of the cotter pin *6* in the hole in the flange *5*. This operation, the plaintiff urges, embodies the substance of its invention.

All claims are combination claims, and 1, 2, and 4 are involved. It is to be noted that jaws that grip the rail are not mentioned in any claim, and nowhere in the specifications is there any mention of the gripping of the rails by jaws of the device or otherwise. Plaintiff's contention, as stated by counsel in argument, is:

"The forces developed by traffic are shown to be tremendous. Consequently, where a device is secured to the web of the rail by a single bolt, screw, or cotter pin, which is round in section, there is unavoidably a tendency of the anticreeper to have a slight pivotal movement on such attaching member. This rocking of the anchor or a *tendency* to rock is one of the attributes of the mechanical structure involved. As constructed, the fit of the device to the rail is such that this is not a movement capable of measurement. It is rather a swinging or pivoting movement, which gives the device a vertical leverage or shackle grip on the flange of the rail, so that, with the upper end of the device secured by this pivotal bolt, when the rail pushes forward and the lower end of the device under the rail abuts the tie, the tie in effect pushes the lower end of the device in a direction which would swing the device around its pivotal connection with the rail, if it were free to swing. As the device fits snugly over the flange of the rail, there is no resulting appreciable movement, but there is a clamping or gripping movement which is increased in proportion to the creeping tendency of the rail."

This is not only plaintiff's claim, but it is the position which plaintiff must take and sustain in order to establish infringement. Notwithstanding the fact that the claims and specifications say that the device is *rigidly* attached to the web of the rail, plaintiff takes the position that the word "rigidly" is not to be understood in its usual and ordinary sense, but that it is to be taken to mean the attachment which exists after the deteriorating forces of traffic upon the rails and ties have taken effect. Plaintiff says those forces loosen the spikes that hold the rails to the ties, and the nuts upon the bolts by which the fish plates are attached to the rails, and that there is occasioned a looseness in the attachment of the device to the web of the rail which permits a rocking of the device or a tendency to rock, so that the jaws of the device will clamp the rail. There is no hint in the patent that the patentees did not invent the thing described, but rather invented something deteriorated by use.

[1] We are of opinion that defendants may not be held to infringe, even though its loose attachment by the small cotter pin in the larger hole operates in a manner similar to the operation of plaintiff's device after the deterioration due to operation has destroyed the rigid attachment. There are, it seems to us, fundamental differences between defendants' device and the device of the patent in suit. In the defendants' device there is no attachment to the tie, and the real force of the device is applied by the forward thrust of the rail bringing the arm *3* into contact with the tie, which tilts the jaws, thereby producing a gripping of the rails. Whether there may be, in operation, considerable stress upon the cotter pin or not, it is clear that the cotter pin was not designed or intended to carry the load.

Plaintiff's device shows a construction not designed to permit even a tendency in the device to rock, but shows a construction designed in every way to prevent any rocking tendency. Besides the rigid attachment of the clamping plate to the rail and the provision for spiking the base plate to the tie, there is the rib or projection *i* forced into the side of the tie, the extension of the depending flange under the base of the rail, and the brace extending at right angles from the flange in such a position that its upper edge contacts with the lower edge of the rail.

[2] Defendants' physical exhibit in the record is not more than six or seven inches long. It would be difficult to attach to it further means of preventing any tendency to the rocking movement, contended for by plaintiff, without the duplication shown in figure 5, which, though disclaimed, is still in the record and may be accepted as showing historically what was in the minds of the inventors. The device in figure 5 is produced by doubling the device shown in the other figures of the patent, so that, instead of having a depending flange down one side of the tie, the base plate crosses the whole width of the tie, with the depending flanges down both sides. The depending flanges on both sides are extended along the sides of the tie under the base of the rail, and there are also braces at right angles to the flanges, with their top edges contacting with the bottom side of the rail, designed to reinforce the flanges. Also there are two spikes through the base plate into the tie. This prevents any possibility of a tendency to rock upon a pivot, unless

every attachment shown in the patent is torn loose. It can avail plaintiff nothing to say that the spikes shown in every figure of the drawing are not described in the specifications except with reference to the disclaimed figure 5, nor can it avail plaintiff anything to show that in the physical exhibit in suit there is no hole in plaintiff's flange through which a spike could be driven. The record shows that plaintiff's device is not used and sold as an anticreeper.

We deem it unnecessary to discuss other reasons appearing in the record, and do not pass on the effect of the disclaimer.

Defendants' device does not infringe, and the decree is affirmed.